FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEREMY CRUMP, Individually and on behalf of a Class of others similarly situated, | |
| Plaintiff, | **OPINION** |
| v. | Civ. No. 14-cv-02365 (WHW) (CLW) |
| PASSAIC COUNTY, PASSAIC COUNTY SHERIFF'S OFFICE, RICHARD H. BERDNIK, both individually and in his official capacity as Sheriff of Passaic County and MICHAEL TOLERICO, both individually and in his official capacity as Warden of the Corrective Services Division of the Passaic County Sheriff's office, | |
| Defendants. | |

**Walls, Senior District Judge**

Two motions are before the Court in this putative class action arising out of strip searches conducted at the Passaic County Jail. Plaintiff moves for leave to file a second amended complaint and to replace the proposed class representative. Defendants oppose Plaintiff's motion to amend as futile and move to dismiss Plaintiff's first amended complaint. Decided without oral argument under Federal Rule of Civil Procedure 78, the Court finds that Defendants Berdnik and Tolerico, in their individual capacities, are protected by qualified immunity from Plaintiff's first cause of action. Plaintiff's motion to amend is otherwise granted, because allowing for the filing of a second amended complaint would be neither inequitable nor futile. Defendants' motion to dismiss Plaintiff's first amended complaint is denied as moot.

## I. Factual and Procedural Background[1]

Plaintiff Jeremy Crump was arrested three times between 2011 and 2013 for failing to pay child support and taken to the Passaic County Jail each time. Am. Compl., ECF No. 24, ¶¶ 10, 48-49. As he was admitted to the jail, Crump was taken into an open hallway and required to fully undress in view of at least ten other detainees as part of a visual strip search. *Id.* ¶¶ 53-61. Defendants are the County of Passaic and the Corrective Services Division of the Passaic County Sheriff's Office ("Corrective Services"), two county governmental organizations responsible for Passaic County Jail, as well as the Sherriff of Passaic County, Richard Berdnik, and the Warden of Corrective Services, Michael Tolerico, in their official and individual capacities. *Id.* ¶¶ 10-14.

On April 11, 2014, Crump began this action for relief on behalf of two proposed classes on both federal and state grounds. Compl., ECF No. 1. He later filed an amended complaint on May 15, 2015. Am. Compl., ECF No. 24. In that complaint, he asserted that Defendants were responsible for a written or de facto "policy, custom or practice of strip searching all individuals" sent to Passaic County Jail. *Id.* ¶ 35. These visual inspections of detainees' bodies, including their genitals, were conducted in a "public area." *Id.* ¶¶ 32-36. These strip searches were allegedly not supported by reasonable suspicion or probable cause and were conducted on individuals arrested for non-indictable offenses such as having unpaid parking tickets. *Id.* ¶ 45.

Plaintiff's first cause of action, brought under 42 U.S.C. § 1983, charged that Defendants violated the Fourth Amendment by having a policy of strip searching detainees arrested or detained for non-indictable offenses before they were introduced into the general population. *Id.* ¶¶ 67-74. The second cause of action, brought under the New Jersey Civil Rights Act, N.J.S.A. 10:6-2(c), claimed that Defendants violated Art. I § 7 of the New Jersey Constitution and the

---

[1] The following facts are taken from Plaintiff's first amended complaint, ECF No. 24, unless otherwise noted.

New Jersey Strip Search Statute, N.J.S.A. 2A:161A-1 et seq., because the strip searches were conducted on detainees held for non-indictable offenses without their valid consent and performed in a location where the subjects could be observed by persons not conducting the search. *Id.* ¶¶ 75-89.

Art. I § 7 of the New Jersey Constitution declares, in relevant part, that the "right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated." N.J.S.A. 2A:161A-1 provides, in relevant part, that a person detained for an offense other than a crime shall not be strip searched unless the search is authorized by a warrant or by consent, or unless the "person is lawfully confined in a municipal detention facility . . . and the search is based on a reasonable suspicion that a weapon, [controlled substance], or contraband . . . will be found, and the search is authorized pursuant to regulations" issued by the Department of Corrections.

Plaintiff also argued that the class periods should begin in 2007 because the statute of limitations had been tolled by the filing of *Levy v. Passaic County*, No. 9-cv-1191, a previous putative class action in this court that also challenged Passaic County Jail's strip search policy. *Id.* ¶¶ 2-3. The plaintiff in that case also asserted that the policy of strip searching all detainees regardless of individualized suspicion violated the Fourth Amendment, but she did not bring any state law claims. No. 9-cv-1191, ECF No. 21 at 1. That case was brought on March 17, 2009, stayed pending a Third Circuit decision, and then dismissed for lack of prosecution. *Id.* at 2-3.

Defendants filed a motion to dismiss the amended complaint on June 12, 2015, arguing that Plaintiff's constitutional claim should be dismissed and that the Court should decline to exercise supplemental jurisdiction over the remaining state law claim. Mot. to Dismiss, ECF No. 26 at 1-2. Defendants also maintain that the statute of limitations was not tolled by the filing of

*Levy* and that the constitutional claim against Berdnik and Tolerico is barred by qualified immunity and sovereign immunity. *Id.* at 21-25; 36-39. Plaintiff opposed the motion to dismiss and moved for leave to amend the complaint a second time, submitting a proposed amended complaint to the Court. Second Mot. to Amend, ECF No. 30. The parties then agreed to a modification of the proposed second amended complaint, Riback Letter, ECF No. 37-1, and Plaintiff submitted a revised proposed second amended complaint ("Proposed Amended Complaint") on October 21, 2015 to be considered along with his motion to amend. ECF No. 40.

## II.   The Proposed Amended Complaint

The Proposed Amended Complaint seeks to remove Crump as class representative and replace him with Paul Nichols. Plaintiff's counsel has certified that Crump "has not responded to . . . many contacts" and "is not cooperating as Class representative." Riback Cert. ECF No. 30-12 ¶ 4. Nichols was incarcerated in Passaic County Jail approximately 20 times in the last five years for failure to pay child support. ECF No. 40-2 ¶ 9. Nichols alleges that each time he was admitted, before he was assigned to the general population, he and one or two other detainees were taken to a room without a door that could be viewed from a "busy hallway" and required to undress, bend over, and cough in full view of each other, the corrections officers, and the hallway. *Id.* ¶ 60.

The Proposed Amended Complaint would also revise Plaintiff's § 1983 claim. Rather than alleging that the underlying Fourth Amendment violation stemmed from strip searches that were conducted without reasonable suspicion, the Proposed Amended Complaint alleges that the Fourth Amendment was violated by the "non-private setting" in which the strip searches took place. ECF No. 40-1 ¶¶ 91-92. The absence of reasonable suspicion remains a component of

Plaintiff's state law cause of action. ECF No. 40-2 ¶¶ 80-93. The Proposed Amended Complaint seeks to certify two classes. The first is a "Federal Law Class," defined as:

> All persons who have been placed into custody of the Passaic County Jail after being charged with non-indictable offenses (such as disorderly persons offenses, traffic infractions and/or civil commitments) and were strip-searched in a location which lacked privacy, specifically was in the view of persons not involved with the conducting of the strip search.

*id.* ¶ 16, and the second is a "State Law Class," defined as:

> All persons who have been placed into custody of the Passaic County Jail after being charged with non-indictable offenses (such as disorderly persons offenses, traffic infractions and/or civil commitments) and were strip-searched upon their transfer and entry into the Passaic County Jail according to the County's policies and practices.

*Id.* Plaintiff continues to assert that the class periods should begin on September 5, 2007 because the relevant limitations period was tolled by the *Levy* action. *Id.* ¶¶ 2-3; 16. The proposed class periods extend "to the date on which the Municipal Defendant is enjoined from, or otherwise ceases from, enforcing its unconstitutional policy, practice, and custom of" conducting strip-searches without privacy or reasonable suspicion, respectively. *Id.* ¶¶ 16

### III. Legal Standard

Federal Rule of Civil Procedure 15(a) allows courts to grant a party leave to amend a complaint "when justice so requires." A "court may use its discretion to impose conditions on the allowance of a proposed amendment as an appropriate means of balancing the interests of the party seeking the amendment and those of the party objecting to it." 6 Charles Alan Wright et al., *Fed. Prac. & Proc.* § 1486 (3d ed.); *see also King v. Kramer*, 763 F.3d 635, 647 (7th Cir. 2014) (noting that a district court could condition a grant of leave for plaintiff to amend on plaintiff's agreement to pay any additional discovery costs); *Estes v. Kentucky Utilities Co.*, 636 F.2d 1131, 1134 (6th Cir. 1980) ("[I]n a proper case conditions may be imposed on the party seeking the amendment . . .").

5

"[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors., Inc.*, 482 F.3d 247, 251 (3d Cir. 2007); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). Where state law claims are before a court based on supplemental jurisdiction, denial of leave to amend is appropriate where all amended federal claims would be futile and where the court would decline to exercise supplemental jurisdiction under § 1367(c)(3) over the state claims. *See, e.g., Saunders v. Bright*, 281 F. App'x 83, 85 (3d Cir. 2008). Amendment is futile "if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss." *Jablonski v. Pan Am. World Airways, Inc.*, 863 F. 2d 289, 292 (3d Cir. 1988); *see also Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) ("In assessing 'futility,' the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6).").

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### IV. Discussion

According to Defendants, Plaintiff's new allegation that Nichols was strip searched in front of other detainees in a non-private setting fails to state a claim under the Fourth Amendment. Reply, ECF No. 36 at 18-26. They also raise two affirmative defenses: that the federal law claim is "barred by the doctrines of qualified immunity and sovereign immunity" with respect to the individual Defendants, and that the statute of limitations was not tolled by

*Levy*. Mot. to Dismiss at 21-25; 36-39. Defendants maintain that Plaintiff's attempt to amend that claim is futile and that, in the federal claim's absence, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(c)(3). Reply at 39. Defendants finally request that, if Plaintiff's state law claims are not dismissed, "they should be stayed pending the disposition of a summary judgment motion by defendants, after focused discovery, addressed to [the] federal law claims." Mot. to Dismiss at 34-35.

In determining whether a grant of leave to amend here would be futile, the Court will first examine whether the Proposed Amended Complaint's § 1983 cause of action states a claim under the Fourth Amendment against any Defendant, using the legal standard that would apply on a Rule 12(b)(6) motion. It will then consider whether, from the face of the Proposed Amended Complaint, Defendants are protected by qualified immunity or the statute of limitations. Defendants have not argued that granting leave to amend would be inequitable, and the Court finds no evidence to suggest that it would be.

The Court will not address Defendants' argument that, if Nichols is allowed to replace Crump as proposed class representative, Crump should be "withdrawn with prejudice as a plaintiff/class representative, and all allegations relating to him should be stricken." Reply at 36-38. Although references to Crump did appear in Plaintiff's original proposed second amended complaint, *see* ECF No. 30, they no longer appear in the revised proposed second amended complaint, which was filed after Defendants' reply brief. *See* ECF No. 40. This section of Defendants' opposition to Plaintiff's motion to amend is now moot. Defendants have not otherwise opposed the substitution of Nichols for Crump as class representative. Reply at 37 ("Replacement of Mr. Crump is appropriate.").

### 1. The Proposed Amended Complaint states a claim under the Fourth Amendment.

To establish a claim under § 1983, "a plaintiff must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996) (internal quotations omitted). Prisoners are "accorded those rights not fundamentally inconsistent with imprisonment itself or incompatible with the objectives of incarceration." *Hudson v. Palmer*, 468 U.S. 517, 523 (1984). Specifically, prisoners "retain a limited right to bodily privacy" under the Fourth Amendment. *Covino v. Patrissi*, 967 F.2d 73, 78 (2d Cir. 1992); *see also Russell v. City of Philadelphia*, 428 F. App'x 174, 177 (3d Cir. 2011) (prisoner could state a Fourth Amendment claim based on a strip and cavity search). In testing reasonableness under the Fourth Amendment, courts "consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979).

In *Florence v. Board of Chosen Freeholders of County of Burlington*, the Supreme Court held that a jail's policy of conducting visual strip searches of detainees who were committed to its general population upon entry was reasonable. 132 S. Ct. 1510, 1523 (2012). Warning that the "difficulties of operating a detention center must not be underestimated by the courts," Justice Kennedy reasoned that visual strip searches can screen detainees for lice, contagious infection, wounds that require medical attention, gang tattoos, and contraband. *Id.* at 1515-19. He also pointed to the potential administrative difficulties that might arise if detainees had to be searched under different standards according to their current or previous offenses. *Id.* at 1521-22. The Court limited its holding and did not consider what would be reasonable under certain circumstances not before it, such as searches involving touching or intentional humiliation or

8

where an arrestee whose detention had not been reviewed by a magistrate could be held apart from the general population. *Id.* at 1522-23. Concurring, Justice Alito emphasized the limits of the Court's holding and wrote that, for minor offenders, "admission to the general jail population, with the concomitant humiliation of a strip search, may not be reasonable, particularly if an alternative procedure is feasible." *Id.* at 1524 (Alito, J., concurring).

In a case decided after *Florence*, the Sixth Circuit held that a plaintiff plausibly alleged a Fourth Amendment violation by claiming that a jail had, "instead of using less invasive procedures, compelled pretrial detainees who were being processed into [a] facility to undress in the presence of other detainees and to have their naked genitals sprayed with delousing solution. . . ." *Williams v. City of Cleveland*, 771 F.3d 945, 947 (6th Cir. 2014). The court distinguished the allegations before it from those in *Florence* both because the corrections officers had allegedly caused contact with the prisoners' genitals and because the plaintiffs were strip-searched in the presence of other detainees. *Id.* at 952-53. *Williams* explained that "if the search is conducted in a particularly invasive manner, despite the lack of exigent circumstances that necessitate the degree of invasion to which the detainee is subjected, then the search may be unreasonable by virtue of the way in which it is conducted." *Id.* at 952.

The Proposed Amended Complaint alleges that, before being seen by a judge, detainees were taken into a room without a door and were examined "in a state of undress and compromised positions" in view of other detainees as well as persons in the hallway. ECF No. 40-2 ¶¶ 32-36. The Supreme Court has directed that "[d]eference must be given to the officials in charge of [a] jail unless there is 'substantial evidence' demonstrating their response to the situation is exaggerated." *Florence*, 132 S. Ct. at 1518. But *Florence* also emphasized how visual strip searches can contribute to institutional security and sanitation by screening for lice,

FOR PUBLICATION

contagious disease, gang tattoos, and contraband. *Id.* at 1518-19; *see also J.B. v. Fassnacht*, 801 F.3d 336, 342 (3d Cir. 2015) (balancing the constitutional rights of juvenile detainees against the "overarching security interests" of a juvenile detention facility). A non-private strip search does not contribute to security and sanitation any more than a private strip search does.

Although the Supreme Court has upheld the general practice of conducting strip searches in detention facilities, it has also noted that "[a]dmittedly, this practice instinctively gives us the most pause." *Bell*, 441 U.S. at 558; *see also Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1272 (7th Cir. 1983) (describing strip searches involving inspection of genital areas as "demeaning, dehumanizing, . . . [and] signifying degradation and submission,") (quoting *Tinetti v. Wittke*, 479 F. Supp. 486, 491 (E.D. Wis. 1979)); *Florence*, 132 S. Ct. at 1527 (Breyer, J., dissenting) (describing strip searches as a "serious affront to human dignity and individual privacy."). Significantly, as the Sixth Circuit reasoned, the "wider an audience for a strip search, the more humiliating it becomes, especially when the stripped individual is exposed to bystanders who do not share the searching officers' institutional need to view [the detainee] unclothed." *Williams*, 771 F.3d at 953. Although Plaintiff's claims here are less egregious than those in *Williams* because no physical contact is alleged, the Sixth Circuit's reasoning as to non-private strip searches is analogous and persuasive. At this stage, the Court will not rule that any claim alleging a Fourth Amendment violation based on strip searches conducted in full view of other detainees would be futile as a matter of law.

Defendants argue to the contrary by directing the Court to two non-precedential Third Circuit opinions and an opinion from this district. In *Brown v. Blaine*, the Circuit upheld a district court's grant of summary judgment where a prisoner alleged that he was strip searched in an unsanitary manner. 185 F. App'x 166, 167-68 (3d Cir. 2006). Those searches "took place in a

private room," and summary judgment was granted after the district court reviewed videotapes of the searches as well as the prisoner's deposition transcript. *Id.* at 169. *Brown* is inapposite because it involved a private strip search and was decided on a motion for summary judgment, after the factual record had been developed so that the district court could consider whether those searches were reasonable. The *Williams* decision is more instructive because it involved a non-private strip search and was in a similar procedural stage as this case.

Defendants also point to *Small v. Wetzel*, in which the Third Circuit affirmed the dismissal of a claim by two Muslim inmates who argued that their constitutional rights were violated when, contrary to their religious practices, they were strip searched in the presence of women. 528 F. App'x 202, 204 (3d Cir. 2013). That case dealt with "a strip search conducted during a prison lockdown—an emergency situation where it is not unreasonable to conduct a strip search in groups." *Id.* at 207. That the searches alleged in *Small* were reasonable given "the need for safety and expediency in an emergency circumstance," *id.*, does not imply that the routine searches alleged by Plaintiff were necessarily reasonable as a matter of law.

Finally, Defendants direct the Court to an unpublished decision from this district, *Barber v. Jones*, No. 12-2578, 2013 WL 211251 at *1 (D.N.J. Jan. 18, 2013) (Chesler, J.). There, a single strip search of a civilly-committed sexually-violent predator, conducted in view of other detainees after he returned from yard time, was held to be "plainly reasonable." *Id.* at *8. But *Barber* also noted that the "reasonableness of a particular search or seizure is determined by reference to the detention context and is a fact-intensive inquiry," *id.* at *7 (citing *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004)), which weighs against a finding of futility here before the facts are developed. And, as discussed, this Court finds the Sixth Circuit's reasoning in

11

*Williams* persuasive. To the extent that the *Barber* decision is contrary to that reasoning, this Court disagrees.

The Court finds that the federal cause of action in Plaintiff's Proposed Amended Complaint is not futile because of a failure to state a claim.

## 2. Defendants Berdnik and Tolerico are entitled to immunity in their individual capacities as to the federal law cause of action.

Defendants argue that Berdnik and Tolerico enjoy qualified immunity from suit and are protected in both their individual or official capacities. Mot. to Dismiss at 21-25; Reply, at 28-33. Defendants raise the issue of immunity only with regard to the § 1983 claim against Berdnik and Tolerico and have not so moved with respect to the state law cause of action. Mot. to Dismiss at 21 n.16. Questions about official immunity are to be resolved "at the earliest possible stage in litigation," *Pearson v. Callahan*, 555 U.S. 223, 232 (2009), and they "may be resolved by Rule 12(b)(6) if clearly established by the allegations within the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998); *see also Ball v. Famiglio*, 726 F.3d 448, 461 (3d Cir. 2013). Because the Court assesses futility of amendment using the same standard as applies on a Rule 12(b)(6) motion, *Shane*, 213 F.3d at 115, it considers whether an immunity defense is clearly established by the allegations in the Proposed Amended Complaint.

Qualified immunity shields state officials acting under color of state law from liability for money damages "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011). Qualified immunity is intended to give "government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Id.* at 2085. As discussed, the Court finds that the

FOR PUBLICATION

Proposed Amended Complaint as pleaded states a claim for a violation of the Fourth Amendment, so the first factor is satisfied. Regarding the second factor, the Supreme Court has explained that:

> A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right. We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional questions beyond debate.

*Id.* at 2083 (internal citations and alterations omitted).

There is no controlling authority that the practices alleged here violate the Fourth Amendment. Absent controlling authority, a "robust 'consensus of cases of persuasive authority'" is required to find that law in question was "clearly established." *al-Kidd*, 131 S. Ct. 2084 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)). Courts have been instructed "not to define clearly established law at a high level of generality." *Id.*

There is no clearly established law that the alleged conduct here violated the Fourth Amendment. The case law on prison strip searches is still being developed, and the Supreme Court has reserved judgment on potential exceptions to the *Florence* rule. 132 S. Ct. at 1523. Although this Court is persuaded by the Sixth Circuit's reasoning as to non-private strip searches in *Williams*, a single decision from another circuit is far from a robust consensus of cases. Nor can the New Jersey laws that Defendants are alleged to have violated defeat their qualified immunity to a § 1983 claim arising out of the Fourth Amendment. *Davis v. Scherer*, 468 U.S. 183, 194 n. 12 (1984) ("Neither federal nor state officials lose their immunity by violating the clear command of a statute or regulation—of federal or of state law—unless that statute or regulation provides the basis for the cause of action sued upon."). It is apparent from the face of the Proposed Amended Complaint that Defendants Berdnik and Tolerico, in their individual

capacities, are entitled to qualified immunity from Plaintiff's first cause of action. That cause of action is dismissed as to these defendants in their individual capacities.

Defendants also assert that the § 1983 cause of action fails to state a claim as to Berdnik and Tolerico in their official capacities. "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. . . ." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978). "The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity . . . may possess, such as the Eleventh Amendment." *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). Sovereign immunity "does not extend to counties and municipalities." *Estate of Lagano v. Bergen County Prosecutor's Office*, 769 F.3d 850, 857 (3d Cir. 2014). Plaintiff has alleged that Berdnik and Tolerico were agents of Passaic County and the Corrective Services Division, two county governmental entities, ECF No. 40-2 ¶¶ 12-13, and they are not entitled to immunity in their official capacities.

But "[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell* . . . local government units can be sued directly for damages and injunctive or declaratory relief." *Graham*, 473 U.S. at 167 n.14 (1985) (citing *Memphis Police Dept. v. Garner*, 471 U.S. 1 (1985)). Citing concerns about redundancy, possible confusion to a jury, and inefficiency, some district courts have exercised their discretion to dismiss unnecessary official-capacity defendants, *e.g. M.S. v. Susquehanna Twp Sch. Dist.*, 43 F. Supp. 3d 412, 419 (M.D. Pa. 2014), and the Third Circuit has affirmed dismissals in such cases. *Cuvo v. De Biasi*, 169 F. App'x 688, 693 (3d Cir. 2006). On the other hand, some other district courts have declined to dismiss redundant official-capacity defendants, particularly where those defendants must answer other charges against them in the same action, because redundancy

FOR PUBLICATION

alone "is not a persuasive basis for dismissal under Rule 12(b)(6)." *Capresecco v. Jenkintown Borough*, 261 F. Supp. 2d 319, 322 (E.D. Pa. 2003).

Defendants here have not moved with regard to Plaintiff's state law claims on immunity grounds "pending disposition of defendants' motion regarding supplemental jurisdiction." Mot. to Dismiss at 21 n.16. Because Berdnik and Tolerico remain in this action as defendants to Plaintiff's state law cause of action in their individual capacity, the dismissal of the federal official capacity claim against them would have little effect on the efficiency of this litigation. The Court declines to exercise its discretion to dismiss Plaintiff's federal claims against Berdnik and Tolerico in their official capacity at this stage. The Court may revisit this decision should the state law claim against them in their individual capacities be dismissed at a later point.

### 3. The Proposed Amended Complaint is not facially deficient with regard to the statute of limitations.

Defendants dispute Plaintiff's contention that the statute of limitations here was tolled by the filing of the *Levy* action. Mot. to Dismiss at 36-39. Like qualified immunity, a statute of limitations is an affirmative defense not normally decided on a motion to dismiss. *E.g. Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009). But while "the language of Fed. R. Civ. P. 8(c) indicates that a statute of limitations defense cannot be used in the context of a Rule 12(b)(6) motion to dismiss, an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n. 1 (3d Cir. 1994). Applying the same standards as to a Rule 12(b)(6) motion, it is "appropriate here to consider the statute of limitations because the relevant dates are set forth unambiguously in the [Proposed Amended C]omplaint." *Brooks*, 578 F.3d at 579. The statute of limitations for a civil rights claim under §

1983 in New Jersey is two years. *Montgomery v. De Simone*, 159 F.3d 120, 126 n. 4 (3d Cir. 1998).

In *American Pipe & Const. Co. v. Utah*, the Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. 538, 554 (1974). The Court later reiterated that the filing of a class action tolls the statute of limitations as to all asserted class members, and not just as to intervenors, in *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350 (1983). Courts have applied *American Pipe* tolling in other circumstances, including subsequent class actions where certification was denied in an earlier suit. *See Yang v. Odom*, 392 F.3d 97, 99 (3d Cir. 2004).

The federal cause of action asserted in Plaintiff's original amended complaint alleged the same violations as the cause of action that was dismissed for failure to prosecute in *Levy*. *Compare* Am. Compl., ECF No. 24 ¶¶ 67-74 *and* Compl., No. 9-cv-1191, ECF No. 1. But the Proposed Amended Complaint now alleges that strip searches at Passaic County Jail violated the Fourth Amendment because they were not conducted privately, an issue that was not specifically addressed in the *Levy* complaint. ECF No. 40-2 ¶¶ 72-79. Plaintiff's second cause of action, like the claim in *Levy*, arises because strip searches were conducted without individualized suspicion. ECF No. 40-2 ¶¶ 80-93. Unlike the claim in *Levy*, Plaintiff brings this second cause of action under state rather than federal law.

Courts differ on whether "class action tolling only applies to claims that are identical to those asserted in the initial class." *In re Community Bank of N. Virginia*, 622 F.3d 275, 299 (3d Cir. 2010). The Sixth Circuit has found that an initial complaint alleging solely state law violations on behalf of a putative class did not toll the statute of limitations for a class member

16

who later asserted a federal law claim arising out of the same facts, *see Weston v. AmeriBank*, 265 F.3d 366, 368-69 (6th Cir. 2001), and the Eleventh Circuit has reached a similar conclusion. *Raie v. Cheminova, Inc.*, 336 F.3d 1278, 1283 (11th Cir. 2003). But the Ninth Circuit has found "no persuasive authority for a rule which would require that the [later] suit must be identical in every respect to the [earlier] class suit for the statute to be tolled." *Tosti v. City of Los Angeles*, 754 F.2d 1485, 1489 (9th Cir. 1985). The Ninth Circuit explained that "such a rule would be illogical" because a defendant has notice as to the nature of the claims against it and is "alerted to make appropriate investigations" even where the two suits are not identical. *Id.* The Second Circuit has reached the same conclusion. *See Cullen v. Margiotta*, 811 F.2d 698, 720 (2d Cir. 1987) ("Notwithstanding the differences between legal theories advanced by plaintiffs in the state court action and those advanced in the present action, we are persuaded that the *American Pipe* doctrine has applicability . . . ") *overruled on other grounds by Agency Holding Corp. v. Malley-Duff & Assoc.*, 483 U.S. 143 (1987). The Third Circuit has yet to decide this question, but it has described *American Pipe* tolling as being available where suits are "substantively identical." *Community Bank of N. Virginia*, 622 F.3d at 300 n.17.

This Court is persuaded that a later claim can be "substantively identical" to an earlier claim for the purposes of *American Pipe* tolling where the claims "share a common factual and legal nexus with those brought in the prior class action." *Id.* at 300. This is consistent with the *American Pipe* decision, which explained that its tolling rule was compatible with the "functional operation of a statute of limitations" because, once a putative class action is filed, "the defendants have the essential information necessary to determine both the subject matter and size of the prospective litigation." 414 U.S. at 554-55.

FOR PUBLICATION

Judging from the face of the pleadings here, the *Levy* action was substantively identical to the state law cause of action here, as both claims arose from strip searches conducted at Passaic County Jail without individualized suspicion. *Levy* alerted Defendants to the subject matter and size of Plaintiff's state law class allegations here. It follows that the proposed class period for the state law cause of action does not "facially [show] noncompliance with the limitations period." *Oshiver*, 38 F.3d at 1384 n. 1.

Similarly, although the federal § 1983 claim in the Proposed Amended Complaint alleges that the strip searches violated the Fourth Amendment by taking place in a non-private setting rather than without individualized suspicion, the Court cannot determine at this stage whether this claim shares a sufficient "common factual and legal nexus" with the *Levy* claim for class action tolling. *Community Bank of N. Virginia*, 622 F.3d at 300. Such a fact-intensive evaluation would be premature before a factual record has been developed, because on a motion to dismiss the court considers only whether the "affirmative defense [of a statute of limitations] clearly appears on the face of the pleading." *Oshiver*, 38 F.3d at 1384 n. 1. The Court finds that Plaintiff's § 1983 claim does not "facially [show] noncompliance with the limitations period" by beginning in 2007. *Id.*

### 4. Defendants' request to stay the state law cause of action is denied.

Finally, Defendants request that the Court stay Plaintiff's state law claims until the disposition of a motion for summary judgment on Plaintiff's federal law claim, because they contend that discovery relating to the state law claims will be "far more expansive" than discovery relating to the federal law claims. Mot. to Dismiss at 34-35. Defendants' argument in support of this request is directed toward the federal claim as it appeared in Plaintiff's first amended complaint rather than as it appears now. *Id.* Specifically, they argue that discovery

Case 2:14-cv-02365-WHW-CLW   Document 43   Filed 12/02/15   Page 19 of 19 PageID: 1651

FOR PUBLICATION

relating to the federal law claim "relates essentially to a single issue: whether the Passaic County Jail can house minor offenders other than in the general population." *Id.* This contention is mooted by this Court's decision to grant Plaintiff leave to amend his complaint, and the Court finds no reason to grant a stay at this time. *See Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985) (The "decision whether to grant a stay . . . is committed to the district court's discretion, since it is a matter of the court's inherent power to conserve judicial resources by controlling its own docket.").

V.    **Conclusion**

Having found that Plaintiff's motion for leave to amend is neither futile nor inequitable, the Court grants Plaintiff's motion to amend the complaint, provided that the Proposed Amended Complaint is modified to reflect the dismissal of the § 1983 claim against Defendants Berdnik and Tolerico in their individual capacities. Defendants' motion to dismiss Plaintiff's first amended complaint is denied as moot. An appropriate order follows.

Date: December 2, 2015

Hon. William H. Walls
United States Senior District Judge

19